1    Brian T. Hafter (SBN 173151)
     brian.hafter@rimonlaw.com
2    RIMON, P.C.
     One Embarcadero Center #400
3    San Francisco, California 94111
     Telephone: 415.810.8403
4    Facsimile: 415.683.5472

5    Attorneys for Defendant
     THE REGENTS OF THE UNIVERSITY
6    OF CALIFORNIA

7

8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| ASHANTI MCMILLON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public entity; SETSU SHIGEMATSU, an individual; DYLAN RODRIGUEZ, an individual; STRONG EDUTAINMENT, a nonprofit public benefit corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 5:20-CV-02049-JWH-SP<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Fed. Rule Civ. Pro 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       March 5, 2021<br>Time:       9:00 a.m.<br>Courtroom: 2<br>Judge:     Hon. John W. Holcomb |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **March 5, 2021**, at **9:00 a.m.**, or on the first date available thereafter, in Courtroom 2 of the above-entitled Court, located at 3470 12th Street, in Riverside, California, Defendant The Regents of the University of California (the "University") will, and hereby does, move to dismiss the First Amended Complaint of Plaintiff Ashanti McMillon ("Plaintiff").

This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff's First Amended Complaint, and each cause of action therein, fails to state a claim upon which relief can be granted against the University.  Fed. R. Civ. Pro. 12(b)(6).

This motion is made and based upon the University's accompanying memorandum of points and authorities in support thereof, the Declaration of Brian T. Hafter, all pleadings, declarations, affidavits, and other evidence on file in this action, and upon such oral argument and/or documentary evidence as may be presented at or before the hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 19, 2021.

Dated:  January 27, 2021                              RIMON, P.C.


By:   _/s/ Brian T. Hafter_
       Brian T. Hafter
       Attorneys for Defendant
       THE REGENTS OF THE UNIVERSITY
       OF CALIFORNIA

1

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION...........................................................................................................1

II.     BACKGROUND.............................................................................................................2

        A.      Procedural Background .....................................................................................2

        B.      Summary of Plaintiff's First Amended Complaint ..........................................4

III.    ARGUMENT ..................................................................................................................7

        A.      The Legal Standards Governing Motions to Dismiss ......................................7

        B.      The Court Should Dismiss Plaintiff's Third Cause of Action for Common
                Law Unfair Competition ...................................................................................8

                1.      The Court Did Not Grant Plaintiff Leave to Add a New Claim....................8

                2.      Plaintiff Cannot Sue the University -- a Public Entity -- for
                        "Common Law" Unfair Business Practices ...................................................9

                3.      Plaintiff's Claim is Barred by the Applicable Statute of Limitations ..........10

                        (a)     The Conduct Alleged Arose in 2013-15 – Beyond the Four-
                                Year Statute of Limitations ...........................................................10

                        (b)     Plaintiff Has Not Pled Facts to Support Equitable Tolling .............12

        C.      The Court Should Dismiss Plaintiff's Second Cause of Action for Breach of
                Contract ............................................................................................................14

                1.      Plaintiff Has Not Pled the Terms of a Contract Between Herself and
                        the University ...............................................................................................14

                2.      Plaintiff's Breach of Contract Claim is Barred by the Applicable
                        Statute of Limitations and Not Subject to Equitable Tolling.......................16

        D.      The Court Should Dismiss Plaintiff's First Cause of Action for Copyright
                Infringement .....................................................................................................17

        E.      The Court Should Dismiss Plaintiff's Causes of Action Without Leave to
                Amend ...............................................................................................................21

IV.     CONCLUSION ..............................................................................................................22

i

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Abagninin v. AMVAC Chemical Corp.*,
6     545 F.3d 733 (9th Cir. 2008) ........................................................................... 21

7

*AirWair International Ltd. v. Schultz*,
8     84 F.Supp.3d 943 (N.D. Cal. 2015) ................................................................ 11

9

*Aldrich v. National Collegiate Athletic Association*,
10    --- F.Supp.3d ----, 2020 WL 5255671 (N.D. Cal. 2020) ................................. 11

11

*Ashcroft v. Iqbal*,
12    556 U.S. 662 (2009) .............................................................................. 7, 8, 17

13

*Bell Atlantic Corp. v. Twombly*,
14    550 U.S. 544 (2007) .................................................................................. 7, 17

15

*CDF Firefighters v. Maldonado*,
     158 Cal.App.4th 1226 (2008) ......................................................................... 14
16

*Doe v. United States*,
17    419 F.3d 1058 (9th Cir. 2005) .......................................................................... 7

18

*Driscoll v. City of Los Angeles*,
19    67 Cal.2d 297 (1967) ............................................................................... 12, 17

20

*Eastburn v. Reg'l Fire Prot. Auth.*,
21    31 Cal.4th 1175 (2003) ................................................................................... 10

22

*Eliminator Custom Boats v. American Marine Holdings, Inc.*,
23    2007 WL 4978243 (C.D. Cal. 2007) ............................................................... 11

24

*Foman v. Davis*,
25    371 U.S. 178 (1962) ....................................................................................... 21

26

*Ishimatsu v. Regents of the Univ. of California*,
     266 Cal.App.2d 854 (1968) .............................................................................. 9

27

28

ii

*Janis v. California State Lottery Commission*,
    68 Cal.App.4th 824 (1998) ...................................................................... 16

*John R. v. Oakland Unified School Dist.*,
    48 Cal.3d 438 (1989) ...................................................................... 12, 17

*Lopes v. Vieira*,
    488 F.Supp.2d 1000 (E.D. Cal. 2007) ...................................................... 10

*Masters v. San Bernardino County Employees Retirement Assn.*,
    32 Cal.App.4th 30 (1995) ...................................................................... 16

*Miklosy v. Regents of California*,
    44 Cal.4th 876 (2008) ...................................................................... 9, 10

*Nozzi v. Housing Authority of City of Los Angeles*,
    806 F.3d 1178 (9th Cir. 2015) ................................................................ 10

*Orthopedic Specialists of Southern California v. Public Employees'
    Retirement System*,
    228 Cal.App.4th 644 (2014) .................................................................. 16

*Righthaven LLC v. Hoehn*,
    716 F.3d 1166 (2013) ........................................................................ 19

*Roley v. New World Pictures, Ltd.*,
    19 F.3d 479 (9th Cir. 1994) .................................................................. 20

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................ 21

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................. 8, 17

*Trinkle v. California State Lottery*,
    71 Cal.App.4th 1198 (1999) .................................................................. 10

*United Med. Devices, LLC v. Blue Rock, Capital, Ltd.*,
    No. CV16-1255 PSG (SSx), 2016 WL 9047157, at *2 (C.D. Cal.
    Aug. 10, 2016) ................................................................................ 14

**Statutes**

17 U.S.C.A. § 507 ................................................................................ 20

iii

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

Cal. Bus. & Prof. Code, § 17200 ................................................................. 10

Cal. Code Civ. Pro. § 339 ......................................................................... 16

Cal. Govt. Code § 815(a) ....................................................................2, 9, 10

Cal. Govt. Code § 818.8 ........................................................................... 16

17 U.S.C.A. § 501(b) ............................................................................... 19

**Other Authorities**

Cal. Const. Art. IX, § 9 ............................................................................. 9

Fed. Rule of Civ. Proc. 8(a) ........................................................................ 7

Fed. Rule of Civ. Proc. 12(b)(6) .............................................................. 3, 7

Fed. Rule of Civ. Proc. 15(a)(2) ................................................................. 9

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Ashanti McMillon ("Plaintiff") filed her initial Complaint against Defendant The Regents of the University of California (the "University"), which purported to state four causes of action for "breach of contract – fraud / misrepresentation," negligence, violations of the California Labor Code, and copyright infringement.   Because the alleged misconduct at issue in these claims largely arose in 2013 – when Plaintiff was a student at the University – the University moved to dismiss based upon the expiration of the applicable statutes of limitations, as well as Plaintiff's failure to adequately allege plead the terms of a contract (and other grounds).

In adjudicating the University's motion to dismiss, the Court identified substantial problems with all four claims, including: (1) Plaintiff's failure to file her lawsuit within the applicable statutes of limitations – and also to identify facts within her Complaint that would justify equitable tolling; (2) Plaintiff's failure to adequately plead the terms of a written or oral contract between herself and the University; and (3) Plaintiff's failure to plead facts showing that she registered any copyrights before filing her lawsuit.   Accordingly, the Court granted the motion to dismiss with leave to amend these claims against the University – to provide Plaintiff with another opportunity to try to correct these significant problems. Plaintiff's First Amended Complaint, however, suffers from the same and other deficiencies.

First, despite *not* obtaining leave of court to plead an entirely *new* cause of action against the University, Plaintiff purports to state a claim for "common law unfair competition."   Plaintiff's new, unauthorized claim against the University is baseless as a matter of law – as a plaintiff may not sue a public entity, such as the University, for liability premised in "common law," as opposed to statute (Cal.

1

Govt. Code § 815(a)).  Moreover, even if this "common law" claim were not barred as a matter of law – which it undeniably is – the claim is based on alleged misconduct that arose more than four years ago and is barred by the statute of limitations.   Plaintiff has not pled facts in her amended pleading to support a viable theory of equitable tolling.

Second, Plaintiff's cause of action for breach of contract suffers from the same deficiencies as before.   Plaintiff has not sufficiently pled the terms of any applicable contract between her and the University.  Moreover, Plaintiff's claim is barred by the statute of limitations and not subject to equitable tolling.

Finally, Plaintiff's claim for copyright infringement does not state a cause of action against the University.   Despite Plaintiff's generic and conclusory allegation that "Defendants" (plural) have infringed her alleged copyrights,  Plaintiff's pleading demonstrates that the alleged "infringement" relates to the alleged acts of the other defendants -- a private, non-profit corporation (S.T.R.O.N.G. Edutainment), and its owners (Professors Setsu Shigematsu and Dylan Rodriguez) – rather than the acts of the University itself, or acts for which the University could be held liable.

Given that Plaintiff has failed for a second time to state any viable claims against the University, the Court should dismiss her First Amended Complaint without leave to amend.

## II.  BACKGROUND

**A.**    **Procedural Background**

On August 13, 2020, Plaintiff filed her initial Complaint against the University, S.T.R.O.N.G. Edutainment, and Professors Setsu Shigematsu and Dylan Rodriguez in Riverside County Superior Court.  The initial Complaint purported to state four causes of action against the University:  (1) first cause of action for "breach of contract – fraud / misrepresentation" (Complaint ¶¶ 18-25); (2) second

2

cause of action for negligence (Complaint ¶¶ 26-31); (3) fourth cause of action for violations of the California Labor Code (Complaint ¶¶ 36-38); and (4) fifth cause of action for copyright infringement (Complaint ¶¶ 36-44).  Following removal to this Court, the University moved to dismiss these claims.  Declaration of Brian T. Hafter in Support of Defendant The Regents of the University of California's Motion to Dismiss Plaintiff's First Amended Complaint (Fed. Rule Civ. Pro 12(b)(6) ("Hafter Decl."), ¶ 2 & Exh. A.

On December 30, 2020, the Court entered an Order granting the University's motion to dismiss ("Order").  Hafter Decl., ¶ 3 & Exh. B.   The Court explained the basis of its ruling as follows:

- With respect to Plaintiff's cause of action for "breach of contract – fraud / misrepresentation," the Court set forth the elements for a breach of contract claim and found that "McMillon's allegations of a written contract do not satisfy this standard.  McMillon does not attach to her Complaint the purported contract, nor does she describe it with sufficient particularity that the Court can determine if it exists."   Order at 6-7.

- The Court continued:  "McMillon's most definite statement — that Shigematsu promised her that she would "own[] the company in its entirety" — utterly fails to allege the substance of any relevant terms.  When did this contract come into existence?  Did Shigematsu sign it?  How and when was Shigematsu to transfer ownership?  The Complaint leaves these and other questions unanswered."  Order at 7.

- The Court similarly found that Plaintiff had not adequately pled a claim based upon an oral contract – explaining that "McMillon's allegations of an oral contract are no more definite."  Order at 7.

3

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

- The Court also found that "vague general promises" between March 27, 2013, and February 1, 2015 "would be time-barred" – and that because Plaintiff's equitable tolling theory "relies entirely on facts not alleged in the Complaint, it cannot succeed."   The Court similarly found that Plaintiff's claims for negligence and violations of the California Labor Code were time-barred, and that Plaintiff's equitable tolling theory was not supported by facts within the Complaint.  Order at 7-10.

- As to Plaintiff's copyright infringement claim, the Court explained that the claim was "untimely filed" because Plaintiff "filed her Complaint containing her copyright infringement claim on August 13, 2020, six weeks before she registered her copyrights in the works at issue." Order at 10-11.

- The Court ultimately concluded that "[f]rom McMillon's Opposition papers, it appears that there is much more to McMillon's story than she included in her original Complaint. Thus, the Court grants leave to amend <u>the first five claims</u>" (emphasis supplied).  The Court did not, however, provide leave for Plaintiff to state any <u>new</u> claims.  Order at 11.

**B.**     **<u>Summary of Plaintiff's First Amended Complaint</u>**

On January 13, 2021, Plaintiff filed her First Amended Complaint ("FAC"). Hafter Decl., ¶ 4 & Exh. C.  The following is a summary of the allegations that are relevant to the University's instant motion to dismiss.

Plaintiff is a former student of the University's Riverside campus.   She was enrolled as a student between 2009 and 2013 – more than seven years ago.  FAC ¶¶ 3-4.  Plaintiff contends that she was a student in Professor Shigematsu's "MCS 190 Studies" course from on or about March 27, 2013 through June 14, 2013.  FAC ¶ 5.

4

Plaintiff alleges that while she was enrolled as at the University (*i.e.,* through her graduation on August 31, 2013), she wrote various literary works and entered into a related business relationship with Professor Shigematsu.  FAC ¶¶ 15-34. Among other things, Plaintiff alleges that Professor Shigematsu "called McMillon on June 30, 2013 and offered her to fully own the company and operate the project in order to develop it into her career."   FAC ¶ 33.

Following Plaintiff's graduation in 2013, she continued to work with Professor Shigematsu on ***their*** private, non-profit business venture, Guardian Princess Alliance, LLC.   Plaintiff alleges a toxic working environment, in which Professor Shigematsu "grew increasingly controlling and emotionally abusive" toward Plaintiff.   Meanwhile, Professor Shigematsu allegedly "began to question McMillon's commitment to the company and often threatened to give her ownership of the company away."   After continued threats, on February 1, 2015, McMillon verbally gave her 60-day notice of resignation from their company.  FAC ¶¶ 35-39.

Plaintiff contends that she "registered her stories with the Copyright Office in May of 2015 and received confirmation of the registration."   FAC ¶ 42 & Exh. D (attaching four copyright registrations).   What Exhibit D to Plaintiff's pleading actually shows is the following: (1) on June 14, 2014, Professor Shigematsu – ***not*** Plaintiff – obtained Copyright Registration TX 7-933-530 for "Guardian Princess Inaugural ***Trilogy***"; (2) on August 5, 2014 – long after she had graduated from the University – Plaintiff obtained Copyright Registration PAu 3-737-900 for "My Heart is True"; and (3) on May 28, 2015 – after she had graduated from the University and resigned from Guardian Princess Alliance, LLC – Plaintiff obtained Copyright Registration TX 8-164-552 for "Princess Vinnea & the Gulavores" and TX 8-164-549 for "Princess Mariana & Lixo Island" (collectively the "Copyrighted Works").

On December 8, 2016, Professor Shigematsu sent Plaintiff McMillon an email about dissolving their company, the Guardian Princesses LLC, and requested that Plaintiff sign over her copyright.  Plaintiff declined.  FAC ¶¶ 43-44.

On March 15, 2018 – *more than four years after Plaintiff's graduation*, and long *after* any relevant statute of limitations for her time as a student had expired for a claim against the University – Plaintiff submitted a whistleblower complaint to the University alleging misconduct of Professor Shigematsu and her husband, Professor Dylan Rodriguez.  FAC ¶ 44.  Between March 19, 2018 and February 21, 2020, Plaintiff communicated with various representatives of the University concerning the whistleblower proceedings.   Plaintiff does *not* allege, however, allege that any representative of the University prevented or deterred her from filing a *civil* complaint, or that Plaintiff relied on the University's conduct in declining to file a *civil* complaint.   FAC ¶¶ 45-65.

While Plaintiff contends that her copyrights are valid, Professor Shigematsu and her private company (S.T.R.O.N.G. Edutainment, the alleged successor to Guardian Princess Alliance, LLC) contend that Plaintiff's registration of the two works on May 28, 2015 was invalid because they are part of the "trilogy" that Professor Shigematsu registered on June 14, 2014.  FAC ¶ 66 & Exhs. E-F.  As Plaintiff has correctly acknowledged, the *University* has stated unequivocally that it has "no interest in the IP issues" between Plaintiff, on the one hand, and Professor Shigematsu and S.T.R.O.N.G. Edutainment, on the other hand.   FAC ¶ 65.

Plaintiff's First Amended Complaint seeks relief under three causes of action: (1) copyright infringement (FAC ¶¶ 70-78); (2) breach of contract (FAC ¶¶ 79-85); and (3) common law unfair competition (FAC ¶¶ 86-92).  As we demonstrate, each of these claims suffers from fatal defects and should be dismissed without leave to amend.

# III.  <u>ARGUMENT</u>

**A.**    <u>**The Legal Standards Governing Motions to Dismiss**</u>

The Court's Order set forth the standards governing a motion to dismiss.   As the Court explained:

- "Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)."

- "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*."

- "To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it

7

asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"; and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)." Order at 5-6.

**B.** **The Court Should Dismiss Plaintiff's Third Cause of Action for Common Law Unfair Competition**[1]

    **1.** **The Court Did Not Grant Plaintiff Leave to Add a New Claim**

Plaintiff's third cause of action for common law unfair competition did not appear in the initial Complaint (Hafter Decl., Exh. A). Plaintiff's unilateral addition of this new cause of action was inconsistent with the Court's Order, which only granted leave to amend five of the seven *existing* claims that appeared in Plaintiff's initial Complaint – as opposed to allowing Plaintiff to state any *new* claim. Order at 11 ("the Court grants leave to amend the first five claims"). Nor did Plaintiff seek leave to file any new claim – such as through a stipulation of the parties or a motion for leave under Federal Rule of Civil Procedure 15(a)(2) ("a

---

[1] We address each of Plaintiff's three causes of action in the following sequence: (1) third cause of action for common law unfair business practices; (2) second cause of action for breach of contract; and (3) first cause of action for copyright infringement. We have used this reverse sequence because it is more logical in addressing Plaintiff's pleading deficiencies.

party may amend its pleading only with the opposing party's written consent or the court's leave"). Because Plaintiff did not have the right to add any new claim, the Court should dismiss this cause of action on this ground alone. Fed. R. Civ. Proc. 15(a)(2).

### 2. Plaintiff Cannot Sue the University -- a Public Entity -- for "Common Law" Unfair Business Practices

Even if Plaintiff had leave to add a new claim for common law unfair business practices, it fails against the University as a matter of law. There is no dispute that the University is a public entity. As Plaintiff acknowledges in her own pleading, "UC was and is a public entity duly organized and existing under and by virtue of the laws of the State of California" FAC ¶ 8. *See also* Cal. Const. Art. IX, § 9 ("The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government . . ."); *Ishimatsu v. Regents of the Univ. of California*, 266 Cal.App.2d 854, 864 (1968) ("the University is a statewide administrative agency possessing adjudicatory powers derived from the Constitution as to the problems and purposes of its personnel"). FAC ¶ 4.

California law prohibits common law claims against public entities. California Government Code Section 815(a) provides: "Except as otherwise provided *by statute* . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"). Cal. Govt. Code § 815(a) (emphasis supplied). As the California Supreme Court has explained: "The Legislative Committee Comment to section 815 states: 'This section abolishes ***all*** *common law* or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation.' Moreover, our own decisions confirm that section 815 abolishes common law tort

liability for public entities." *Miklosy v. Regents of California*, 44 Cal.4th 876, 899 (2008) (emphasis supplied). *See also Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal.4th 1175, 1179-80 (2003) (direct tort liability of public entities must be based on a specific statute declaring the entities as to be liable or at least creating some specific duty of care); *Nozzi v. Housing Authority of City of Los Angeles*, 806 F.3d 1178, 1200-01 (9th Cir. 2015) (Ninth Circuit explains that "California has abolished common law tort liability for public entities . . . Thus, under California law, a public entity is not liable for an injury").

On its face, Plaintiff's third cause of action is for "*common law*" unfair business practices.   Accordingly, as a matter of law, she cannot state this common law claim against a public entity like the University.   Cal. Govt. Code § 815(a); *Miklosy*, 44 Cal.4th at 899.[2]

### 3. Plaintiff's Claim is Barred by the Applicable Statute of Limitations

### (a) The Conduct Alleged Arose in 2013-15 – Beyond the Four-Year Statute of Limitations

Even if Plaintiff had leave of court to assert this new claim (which she does not) – and even if Plaintiff could viably plead this common law claim against a public entity (which she cannot) – the cause of action would nonetheless be time-barred.   A defendant may move to dismiss a complaint where the face of the complaint shows that it is time-barred.   *Lopes v. Vieira*, 488 F.Supp.2d 1000, 1043 (E.D. Cal. 2007).   As the U.S. District Court for the Northern District of California recently confirmed:  "A party may raise a statute of limitations argument in a motion

---

[2] Nor could Plaintiff plead a *statutory* unfair business practices claim against the University under California Business and Professions Code Section 17200. *Trinkle v. California State Lottery*, 71 Cal.App.4th 1198, 1202 (1999) ("Nowhere in the Unfair Competition Act (UCA; Bus. & Prof. Code, § 17200 et seq.) is there a provision imposing governmental liability for violations of the act. *Because there is no statute making public entities liable under the UCA, the general rule of governmental immunity must prevail*") (emphasis supplied).

10

to dismiss if it is apparent from the face of the complaint that the complaint was not timely filed and that the plaintiff will be unable to prove facts that will establish the timeliness of the claim." *Aldrich v. National Collegiate Athletic Association*, --- F.Supp.3d ----, 2020 WL 5255671 (N.D. Cal. 2020).

The statute of limitations for common law unfair business practices is four years. *AirWair International Ltd. v. Schultz*, 84 F.Supp.3d 943, 959 (N.D. Cal. 2015) ("The statutes of limitations for statutory and common law unfair competition claims are also four years"); *Eliminator Custom Boats v. American Marine Holdings, Inc.*, 2007 WL 4978243, at *3 (C.D. Cal. 2007) (statute of limitations for common law unfair competition claim is four years).

The factual basis of Plaintiff's common law unfair business practices claim is rooted in Professor Shigematsu's purported misconduct that arose during the time that Plaintiff: (1) was a student at the University (which ended in 2013; FAC ¶ 4); and (2) worked at Guardian Princess Alliance, LLC (from which Plaintiff resigned on February 1, 2015; FAC ¶ 39).  FAC ¶¶ 88-90 (describing alleged misconduct supporting this cause of action, which arose between 2013 and 2015).   Plaintiff's time to seek relief for such conduct expired long before she filed this lawsuit – *i.e.,* by February 15, 2019 *at the latest*.

The only conduct alleged following Plaintiff's time as an enrolled student or working for Guardian Princess Alliance, LLC is the University's purported "permitting and concealing" of Professor Shigematsu's prior alleged misconduct (from 2013-15) in the subsequent whistleblower proceedings (which occurred in 2018-20).  FAC ¶¶ 91.  This is not a plausible theory of liability.  As Plaintiff's own pleading confirms, she was well aware of Professor Shigematsu's alleged misconduct when it occurred -- which is why she ultimately resigned in February 2015 (FAC ¶ 39).  She had four years to try to pursue a common law unfair business practices claim based on this alleged misconduct, but failed to do so.  The fact that

11

1    the whistleblower proceedings in 2018-20 were premised upon Professor

2    Shigematsu's alleged misconduct from 2013-15 does not somehow revive a dormant

3    civil claim to seek relief based on such acts.

4              **(b)    Plaintiff Has Not Pled Facts to Support Equitable Tolling**

5         As explained above, Plaintiff's common law unfair business practices claim

6    suffers from many fatal defects, including that it is time-barred.   Despite receiving

7    leave of court to plead facts to support the equitable tolling of the statute of

8    limitations, Plaintiff has failed to do so.

9         The elements of equitable estoppel are:  (1) the party to be estopped must be

10   apprised of the facts; (2) he must intend that his conduct shall be acted upon, or

11   must so act that the party asserting the estoppel had a right to believe it was so

12   intended; (3) the other party must be ignorant of the true state of facts; and (4) he

13   must rely upon the conduct to his injury.  *Driscoll v. City of Los Angeles*, 67 Cal.2d

14   297, 305 (1967).   As the California Supreme Court has explained:  "It is well settled

15   that a public entity may be estopped from asserting the limitations of the claims

16   statute where its agents or employees have *prevented or deterred the filing of a*

17   *timely claim by some affirmative act* . . . Estoppel most commonly results from

18   *misleading statements about the need for or advisability of a claim;* actual fraud or

19   the intent to mislead is not essential . . . A fortiori, estoppel may certainly be

20   invoked when there *are acts of violence or intimidation that are intended to prevent*

21   *the filing of a claim.*"  *John R. v. Oakland Unified School Dist.*, 48 Cal.3d 438, 445

22   (1989) (emphasis supplied).

23        The facts in Plaintiff's FAC do not support an equitable estoppel theory

24   against the University for at least the following reasons:

25        •    Plaintiff ceased being a student at the University in 2013, but she did

26             not submit her "whistleblower complaint" until March 15, 2018 – *more*

27             *than four years after she was a student*, and when the statute of

28

limitations *had already expired* for any claims against the University for alleged misconduct that occurred during her enrollment.   FAC ¶ 4, 44.   In other words, Plaintiff does not point to any alleged misconduct by the University until *after* March 15, 2018 – when the applicable statute of limitations had already *expired*.

- The First Amended Complaint does not allege any facts whatsoever to show that the University *prevented or deterred* Plaintiff from filing a *civil* complaint.   Rather, after such a civil complaint already would have been time-barred, on April 4, 2018 a representative of the University purportedly described several options for seeking relief through the University's internal procedures – *i.e.,* "informal resolution," "wait until the investigation concludes and then submit [her internal whistleblower complaint]," or "Proceed forward with the allegations." FAC ¶ 46.  There is not one factual allegation in the entire pleading that states that a University representative prevented or deterred Plaintiff from filing a *civil* complaint – let alone even discussed the topic of a *civil* complaint with Plaintiff.

- There are no facts in the First Amended Complaint to suggest that Plaintiff *relied* on the University's conduct in deciding not to file a *civil* complaint.   Indeed, as explained above, she points to no facts whatsoever demonstrating that the University prevented or deterred Plaintiff from filing a civil complaint.   Moreover, and importantly, she does not state or even imply in her amended pleasing that she relied upon any of the University's conduct in not filing a civil complaint. The absence of this and other factual allegations is telling.

Accordingly, Plaintiff has not stated facts in the First Amended Complaint to revive her unauthorized and untimely claim under an equitable estoppel theory.

**C.** **The Court Should Dismiss Plaintiff's Second Cause of Action for Breach of Contract**

**1.** **Plaintiff Has Not Pled the Terms of a Contract Between Herself and the University**

In granting the University's prior motion to dismiss, the Court identified the following elements of a breach of contract claim:  "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." Order at 6 (citing *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008), *as modified on denial of reh'g* (Feb. 5, 2008)). The Court also identified the governing standard that "[t]o plead the existence of a contract, a plaintiff must quote the terms of the purported contract, attach it to the complaint, or clearly allege the substance of the relevant terms." Order at 6-7 (citing *United Med. Devices, LLC v. Blue Rock, Capital, Ltd.*, No. CV16-1255 PSG (SSx), 2016 WL 9047157, at *2 (C.D. Cal. Aug. 10, 2016)).  Concluding that Plaintiff's allegation of a written contract in her initial Complaint "did not satisfy this standard," the Court dismissed her contract claim with leave to amend.  Order at 7.

Plaintiff's First Amended Complaint similarly does not plead a *written* contract between herself and the University.  She does not "quote the terms of the purported contract, attach it to the complaint, or clearly allege the substance of the relevant terms," as required by the Court.  Indeed, Plaintiff's breach of contract cause of action does not even include the words "contract" or "agreement" – let alone the precise terms.  FAC ¶¶ 79-85.

Plaintiff's breach of contract claim merely alleges that "McMillon is informed and believes, and on that basis alleges, that Shigematsu used deceptive and fraudulent tactics to induce McMillon to write stories, songs and other creative works for a proposed company and not pursue her master's degree in education and

14

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

teaching credential, with the promise of McMillon one day having complete ownership rights to Shigematsu's proposed company that would be "more impressive than an "MBA" and provide a sustainable wage plus notoriety.  Instead, Shigematsu ousted McMillon from the company by forcing McMillon to live in Defendants Shigematsu and Rodriguez' home and endure stressed environments, threats and harassment, dissolved their company "Guardian Princesses LLC" and created a non-profit called "S.T.R.O.N.G. Edutainment."  FAC ¶ 80.   These allegations do not plead the existence of a "contract" between Plaintiff and the University – let alone answer the Court's express questions.  Order at 7 ("McMillon's most definite statement — that Shigematsu promised her that she would "own[] the company in its entirety" — utterly fails to allege the substance of any relevant terms.  When did this contract come into existence?  Did Shigematsu sign it?  How and when was Shigematsu to transfer ownership?  The Complaint leaves these and other questions unanswered").

Plaintiff's reference *earlier* in her pleading (*not* in the breach of contract cause of action itself) to Regents Policy 2301 of UC's Policy Handbook is specious.  FAC ¶ 69.  Policy 2301 simply articulates a general policy concerning the University's obligation to provide a "quality education" to its students – free of "misuse of the classroom." *Id.*  While Policy 2301 states that "[s]tudents who enroll on the campuses of the University of California are parties to a moral and contractual relationship," this general policy statement hardly constitutes a binding written "contract" that would support a breach of contract cause of action against the University.  To be sure, this "contract" does not cover the allegations of wrongdoing alleged in Plaintiff's First Amended Complaint – *i.e.,* a "contract" promising Plaintiff an ownership interest in Professor Shigematsu's private company, which Professor Shigematsu allegedly did not deliver as promised.   Moreover, as explained below, any breach of this purported contract (Policy 2301) to provide a

"quality education" arose when Plaintiff was a student in 2013 – and is well beyond the applicable statute of limitations.

Like her prior pleading, Plaintiff's First Amended Complaint similarly does not allege that she and the University are parties an *oral* contract.  FAC ¶¶ 79-85.  *See also* Order at 7 ("McMillon's allegations of an oral contract are no more definite").  Indeed, even if Plaintiff had alleged that she and the University were parties to an oral contract – which she has not – it would not be enforceable against the University as a matter of law.  *Orthopedic Specialists of Southern California v. Public Employees' Retirement System*, 228 Cal.App.4th 644, 649 (2014) ("an oral promise cannot be enforced against a government agency").

Moreover, even if any false oral (or written) promises by Professor Shigematsu constated a "contract," the University would be immune from liability for these purported misrepresentations.  Cal. Govt. Code § 818.8 ("A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional"); *Masters v. San Bernardino County Employees Retirement Assn.*, 32 Cal.App.4th 30, 43 (1995) ("the immunity of a public entity for misrepresentation by its employee, whether intentional or negligent, is absolute"); *Janis v. California State Lottery Commission*, 68 Cal.App.4th 824, 830 (1998) ("Whether a governmental tort immunity applies does not depend on the form of the pleading, or relief sought")

**2.     Plaintiff's Breach of Contract Claim is Barred by the Applicable Statute of Limitations and Not Subject to Equitable Tolling**

Under California law, the statute of limitations for a cause of action for breach of oral or written contract is two or four years, respectively.  Cal. Code Civ. Pro. § 339 (two-year statute of limitations for breach of oral contract); § 337(a) (four-year statute of limitations for breach of written contract).   The alleged breaches at issue in Plaintiff's First Amended Complaint arose between 2013 and

16

1    2015 (FAC ¶ 80), but she did not file her civil lawsuit until 2020.  Thus, her

2    contractual claim is time-barred.  *See also* Order at 7 (action to enforce "vague

3    general promises" made between March 27, 2013, and February 1, 2015 "would be

4    time-barred").

5    　　　　Nor is Plaintiff's breach of contract claim subject to equitable tolling.   As

6    explained in Section III-B-3-b above: (1) the applicable statutes of limitations

7    expired before Plaintiff even filed her whistleblower complaint; (2) Plaintiff does

8    not plead facts showing that the University prevented or deterred her from filing a

9    civil complaint; and (3) Plaintiff does not plead facts showing that she relied on the

10   University's conduct in declining to file a civil complaint.  *Driscoll*, 67 Cal.2d at

11   305; *John R.*, 48 Cal.3d at 445.

12   **D.**　　**The Court Should Dismiss Plaintiff's First Cause of Action for Copyright**

13   　　　　**Infringement**

14   　　　　Plaintiff alleges that "Defendants" – including the University – have

15   purportedly infringed the Copyrighted Works.  FAC ¶ 72 ("Defendants have created

16   derivative works from, reproduced, distributed and/or displayed the Copyrighted

17   Works in violation of Plaintiff McMillon's exclusive rights under the Copyright Act.

18   Plaintiff McMillon has not licensed or otherwise authorized Defendants' creation of

19   derivative works from, reproduction, distribution or display of the Copyrighted

20   Works").  While the University recognizes that a court adjudicating a motion to

21   dismiss must accept all material allegations in a complaint as true, Plaintiff's generic

22   and conclusory allegation against the University of "infringement" is not *plausible* –

23   let alone sufficient to require the University to litigate an intellectual property

24   dispute in which it undeniably has no interest.  *Twombly*, 550 U.S. at 570; *Ashcroft*,

25   556 U.S. at 678; *Starr*, 652 F.3d at 1216.

26   　　　　First, other than the *single* generic allegation in Paragraph 72 that

27   "Defendants" have infringed the Copyrighted Works, there is not one allegation in

28

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

Plaintiffs' entire pleading asserting – or even implying – that the University is infringing.  There is not one specific factual allegation regarding the University's purported: (1) *creation* of "derivative works"; (2) *reproduction* of the Copyrighted Works; (3) *distribution* of the Copyrighted Works; and/or (4) *display* of the Copyrighted Works.  Indeed, in the first 69 paragraphs of the First Amended Complaint – which set forth in great detail the factual background of Plaintiff's claims – *there is not one fact alleging that the University has engaged in any act of copyright infringement*.   Simply stating, in such a conclusory manner, that all "defendants" have infringed is not plausible on its face – and particularly in light of other allegations in the pleading, described below.

Second, despite Plaintiff's label for this cause of action, Plaintiff's copyright *infringement* cause of action is actually dispute over intellectual property *ownership* between her, on the one hand, and Professor Shigematsu and S.T.R.O.N.G. Edutainment, on the other hand.   The dispute involves the validity of Professor Shigematsu's copyright registration of the "trilogy" on June 14, 2014, as contrasted with Plaintiff's subsequent copyright registrations on August 5, 2014 and May 28, 2015 – all of which occurred long after Plaintiff graduated.   FAC ¶ 42 & Exh. D. As Plaintiff has correctly conceded, the University has stated unequivocally that it has "no interest in the IP issues" between Plaintiff, on the one hand, and Professor Shigematsu and S.T.R.O.N.G. Edutainment, on the other hand.  FAC ¶ 65.  The University has nothing whatsoever to do with their private dispute regarding the validity and ownership of their competing copyrights.   FAC ¶ 66 & Exhs. E-F.

Third, Plaintiff may argue that because Professor Shigematsu is a professor at the University, the University itself is liable for her alleged conduct.  The First Amended Complaint shows, however, that the core of this dispute involves a private, non-profit company that Plaintiff and Professor Shigematsu founded together; the intellectual property owned (or not owned) by that company and/or its

members; and those parties' respective rights to use such intellectual property.  The copyright applications at issue – and the alleged infringement / ownership dispute – *post-dates Plaintiff's graduation from the University*, and involves Professor Shigematsu's *private* business venture (with Plaintiff) *outside of the course and scope of her employment with the University*.   Even though Plaintiff was a student in Professor Shigematsu's class in 2013, the "infringement" at issue involves the workings of a private venture that the *University* undeniably does *not* own, operate or control.   FAC ¶ 7 ("defendant S.T.R.O.N.G EDUTAINMENT ("Edutainment"), is a non-profit company under the control of, owned and operated by Shigematsu and Rodriguez, doing business as 'Guardian Princess Alliance'").

Finally, even if Plaintiff had otherwise pled facts sufficient to state a plausible cause of action against the University (which she has not), her claim suffers from other defects:

- Plaintiff is not the copyright holder of Copyright Registration TX 7-933-530 for "Guardian Princess Inaugural Trilogy," which Professor Shigematsu obtained on June 14, 2014.  FAC, Exh. D.  Accordingly, Plaintiff lacks standing to assert a claim for copyright infringement as to this work.  17 U.S.C.A. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it"); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1167-72 (2013) (affirming district court's dismissal of copyright infringement claim because plaintiff was not that owner of the copyrights at issue).

- In Plaintiff's initial Complaint, the crux of her copyright infringement claim was her contention that on or about *June 17, 2016*, Professor Shigematsu "*infringed* on the copyright of Plaintiff . . . *by registering*

19

*works attributable to Plaintiff*").  Complaint ¶¶ 40, 42-43.  After the University demonstrated that this theory was barred by the three-year statute of limitations for copyright claims (17 U.S.C.A. § 507), it mysteriously vanished from Plaintiff's First Amended Complaint. Plaintiff should not be permitted to proceed on her time-barred claim simply by omitting the facts from a prior pleading.

- Despite the generic allegations in Paragraph 72 above, the true "infringement" that is the basis for Plaintiff's current claim is premised upon Professor Shigematsu's registration of the "trilogy" on *June 14, 2014*.  FAC, Exh. D.   More than three years since that date have long passed, making Plaintiff's claim time-barred (and not subject to equitable tolling for the reasons described previously).  17 U.S.C.A. § 507 (three year statute of limitations for copyright infringement). [3]

- In the alternative to dismissing Plaintiff's claim against the University in its entirety, the Court should dismiss Plaintiff's copyright infringement claim as to any alleged infringement that occurred before August 13, 2017 (more than three years before Plaintiff filed her Complaint).   As the Ninth Circuit has explained:  "Section 507(b) is clear on its face. 'It does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period' . . . This interpretation is consistent with the prevailing view that the statute bars recovery on any claim for damages that accrued more than three years before

---

[3] Indeed, Professor Shigematsu's copyright registration at issue occurred on June 14, 2014 (FAC, Exh. D) – more than two years *earlier* than the June 17, 2016 date stated in the initial Complaint – and more than six years before Plaintiff filed this lawsuit.

*McMillon v. The Regents of the University of California, et al.*
Defendant The Regents Of The University Of California's Motion To Dismiss Plaintiff's First Amended Complaint

commencement of suit . . . Roley filed his suit on February 7, 1991. Here, then, § 507(b) bars recovery of any damages for claims that accrued prior to February 7, 1988." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

For all of these reasons, the Court should dismiss Plaintiff's copyright claim against the University without leave to amend.

**E.   The Court Should Dismiss Plaintiff's Causes of Action Without Leave to Amend**

A motion to dismiss should be granted without leave to amend where, as here, a plaintiff cannot state additional facts to cure the pleading's deficiency (and/or has previously availed herself of the opportunity to file an amended pleading that did not state a plausible claim). *e.g., Abagninin v. AMVAC Chemical Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may be denied if a court determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency' [and] "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment") (citing *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) and *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court's Order identified the many problems with Plaintiff's initial Complaint – and provided a roadmap to Plaintiff of what she would need to plead to state viable claims.   For the reasons explained above, Plaintiff's First Amended Complaint falls woefully short.   Accordingly, the Court should grant the University's motion to dismiss without leave to amend.

# IV.  CONCLUSION

For the foregoing reasons, the Court should grant the University's motion to dismiss.   Given that there is no reasonable probability that Plaintiff can cure her pleading defects – and has already tried to amend her pleading unsuccessfully – the Court should grant the University's motion to dismiss without leave to amend.

Dated:  January 27, 2021                    RIMON, P.C.


By:   */s/ Brian T. Hafter*
         Brian T. Hafter
         Attorneys for Defendant
         THE REGENTS OF THE UNIVERSITY
         OF CALIFORNIA